PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:13cr239 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CHRISTOPHER D. RARICK, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Regarding ECF No. 19] |

Pending is Defendant Christopher Rarick's Motion to Suppress all evidence obtained as a result of law enforcement's search of his Samsung cell phone, as well as all fruits obtained therefrom. ECF No. 19. The United States opposes suppression. ECF No. 23. An Evidentiary Hearing was held on October 15, 2013. For the reasons discussed below, the motion to suppress is denied.

### I. Background[1]

**A. Initial Interactions**

On February 14, 2013, at approximately 4:11 p.m., Ashland City Police Officer Kim Mager first observed Defendant Christopher D. Rarick while he was driving on Claremont

---

[1] The facts describing the police encounter closely mimic Rarick's motion to suppress, ECF No. 19. Also relied on are Officer Mager's report of the encounter which was admitted into evidence during the Hearing. *See* Government's Ex. 1 (Report of Ofc. Mager).

(1:13cr239)

Avenue in Galion, Ohio.  ECF No. 19 at 2.  After Rarick drew the officer's attention, Officer Mager conducted a LEADS inquiry on the car Rarick was driving and determined that Rarick was its owner, and that Rarick's driving license was under suspension.  Id.  Officer Mager then observed Rarick turn into the parking lot of and enter the Cheap Tobacco store.  Officer Mager turned into an adjacent, connected parking lot and conducted further electronic inquiries of Rarick's driving status, driving history, and accompanying history.  She also requested backup for assistance with the stop.  Id.  While Officer Mager was still in her cruiser, Rarick exited the store, approached the officer's cruiser, and asked what she wanted.  Id.  The pair engaged in conversation.  Officer Mager explained that Rarick's license plate revealed that he was driving under suspension; Rarick told Officer Mager that she did not have authority to ask his name or check his license plates.  Id.  Officer Mager ordered Rarick to sit in his car and give Officer Mager time to "sort this out."  Id.  Rarick did not sit in his car, but he did go to his car where he began eating fast food from a bag he retrieved from his car.  Id.

Rarick and Officer Mager engaged in several conversations during which Rarick challenged Officer Mager's authority to question him or order him to sit in his car.  Id.  Rarick did not directly answer Officer Mager's questions, but he indicated that the issue of driving under suspension had been taken care of, Officer Mager, thereafter, informed him that their interaction constituted an official traffic stop.  Government's Ex. 1 (Report of Ofc. Mager).  And, for the first time, Officer Mager activated the overhead lights of her cruiser.  Rarick continued to disobey the officer's orders to sit in his car.  Instead, he removed his cell phone from his pocket and pointed his cell phone at Officer Mager.  Id.  Officer Mager took Rarick's cell phone from

2

(1:13cr239)

his hand and placed it on the trunk of his car. *Id*. at 2-3. Rarick rejoined that he wanted to record the police encounter and retrieved his cell phone. *Id*. at 3. While Officer Mager threatened to taser Rarick, he sat in the passenger seat of his "car and began manipulating his phone." *Id*. Officer Mager advised Rarick to put his hands on the dashboard. *Id*. Eventually, after putting his phone in record mode, Rarick placed his phone and both hands on the dashboard. *Id*.

When backup, Officer Neumann and Lieutenant Hoover, arrived, Officer Mager advised them that Rarick had refused to cooperate with her "on multiple levels" and that he had been driving under suspension. *Id*. The officers arrested Rarick and transported him to the Ashland County jail. *Id*. The officers also seized Rarick's cell phone "as evidence as it memorialized a portion of the exchange including information pertinent [sic] conversation." *Id*. Officer Mager issued Rarick a citation for driving under suspension and obstructing official business. *Id*. After posting bond, Rarick was released. His cell phone– a black Samsung Nexus S 4G model SPH-D720–was seized as evidence and kept in the Ashland City Police evidence room. *Id*.

**B. First Search–Cell Phone Only**

After unsuccessfully attempting to obtain consent from Rarick to search his cell phone, on February 19, 2013, Lieutenant Joel Icenhour applied for and received the first of three search warrants at issue in this case. This first warrant authorized a search of Rarick's cell phone. *Id*. In the supporting affidavit, Lt. Icenhour swore that he had good cause to believe that the cell phone stored evidence relating to the offense of Obstructing Official Business, a violation of Ohio Revised Code Section 2921.31. Ashland Municipal Court Judge John Good reviewed both the affidavit and the search warrant. After approving the documents, Judge Good issued the first

3

(1:13cr239)

warrant on February 19, 2013.  ECF No. 23 at 2-3.

On February 21, 2013, Lt. Icenhour executed the first search warrant.[2]  Id. at 3.  Using the Susteen Secure View 3 cell phone forensics system to extract files from the cell phone, Lt. Icenhour inadvertently discovered numerous pictures and videos of suspected child pornography. Id.  These discoveries caused Lt. Icenhour to apply for and receive a second warrant to search Rarick's cell phone for offenses related to the sexual abuse of a minor.

### C. Second Search Warrant–Cell Phone Only

The second search warrant was issued on February 21, 2013 and expanded the authority of the search to include evidence related to the offenses of Illegal use of a Minor in Nudity Oriented Material or Performance, Pandering Sexually Oriented Matter Involving a Minor, Pandering Obscenity Involving a Minor, and Rape, violations of Ohio Revised Code Sections 2902.323, 2907.322, 2907.321 and 2907.02.  Id.  Like the first, the second affidavit and search warrant were both reviewed and approved by Ashland Municipal Court Judge John Good, whom issued the second warrant on February 21, 2013.  Id.

Lt. Icenhour executed the second search warrant of the cell phone.  In so doing, he found images of suspected minors engaged in various sex acts.  Id.  During his search of the phone, Lt. Icenhour located numerous photographs which bore indication that they had been taken with Rarick's cell phone.  Id.  In the same folder as the photographs, Lt. Icenhour discovered various videos all of which had either showed Rarick or contained his voice, including three videos

---

[2] Even with the search warrant, Lt. Icenhour needed Rarick's cell phone pass code which Rarick's father provided.  At the hearing testimony informed that without the pass code, the search would have taken longer and delayed the return of Rarick's phone.

(1:13cr239)

depicting an apparent rape, by Rarick, of a teen who appeared passed out. *Id*.

As a result of the execution of the second warrant, the police located Rarick while he was driving his car and arrested him. *Id*. The car, which contained numerous hard drives as well as sex devices and a gun, was impounded and inventoried. *Id*

### D. Third Search Warrant–Vehicle and Residence

On February 22, 2013, Lt. Icenhour applied for and received the third search warrant issued in this case. That warrant authorized the search of Rarick's vehicle and his residence in Ashland, Ohio. *Id*. at 3-4. This time, because the apparent rape victim had been identified as a juvenile, on February 22, 2013, the third affidavit and search warrant were both reviewed and approved by Ashland County Juvenile Court Judge Damian Vercillo. *Id*. The third search warrant was executed the same day issued, and among the items seized at Rarick's residence, was a pink device matching the device used on the juvenile victim in the video. *Id*.

On April 30, 2013, a federal grand jury indicted Rarick on two counts of exploiting children and one count of possession of child pornography. *Id*.

## II. Analysis and Ruling

Rarick argues that each of the search warrants is facially invalid because: (1) the warrants did not incorporate the affidavits; (2) the warrants failed to describe with particularity the criminal conduct to which the search is related; and (3) that the first search warrant was overly and unconstitutionally broad. ECF Nos. 19 at 12; 26 at 6-7. Rarick contends that "all evidence obtained in this case by way of the search warrants and all fruits derived therefrom should therefore be suppressed from the government's case-in-chief." ECF No. 19 at 13.

"It is well-settled that items to be seized pursuant to a search warrant must be described with particularity to prevent the seizure of one thing under a warrant describing another in violation of the Fourth Amendment." *United States v. Richards*, 659 F.3d 527, 536-37 (6th Cir. 2011), quoting *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003). "The chief purpose of the particularity requirement [is] to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *Id.* at 537, quoting *Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 441 (6th Cir. 2006). In order to be valid, "[a] search warrant must particularly describe the things to be seized, but the description, whose specificity will vary with the circumstances of the case, will only be valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Guest v. Leis*, 255 F.3d 325, 327 (6th Cir. 2001) (internal citation and quotation omitted). In describing the reason for the particularity requirement, the Sixth Circuit summarized "[t]herefore, the test can be divided into two components: (1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched. *United States v. Gahagan*, 865 F.2d 1490, 1497 (6th Cir. 1989) (*quoting United States v. Turner*, 770 F.2d 1508, 1509 (9th Cir. 1985)).

**A. Validity of the Warrants**

Each warrant at issue was issued by a state court judge whom also reviewed the supporting affidavit. *See* ECF Nos. 23-1 through 23-3. None of the warrants, on their face, state

(1:13cr239)

the crime being investigated or identify the criminal statutes Rarick allegedly violated. Rather, each warrant *refers* to the affidavit submitted to the judge by intoning: "*WHEREAS there has been filed with me an affidavit.*" In the very next sentence, the warrant explains "*These are, therefore, to command you . . .*" and proceeds to authorize the thing or place to be searched and the items to be seized, if found. Regrettably, but not fatally, the affidavits were not attached to the copies of the warrants provided to Rarick. The Affiant–Lt. Icenhour–whom executed each warrant, however, had access to the warrants and the affidavits, in addition to his knowledge of the case.

One of Rarick's challenges to the validity of the warrants appears to be the warrants' failure to use explicit words incorporating the affidavits. Because it is clear from the language of the warrants and the testimony presented at the Hearing that the judicial officers issuing the warrants did so after reviewing and relying on the affidavits presented along with the warrants, the Court finds Rarick's argument to be without merit. Moreover, the undersigned interprets the judges' use of the "*These are, therefore*" language as inextricably referencing or tying the affidavits to the issuance of the warrants.[3] See *Gahagan*, 865 F.2d at 1497 (holding that the affidavit and knowledge of the executing officer may cure any insufficiencies in the search warrant).

That the affidavits were not explicitly incorporated into the warrants does not render the

---

[3] In its opposition brief, the Government avers that "each warrant incorporates the respective affidavit." ECF No. 23 at 7-8. The record, however, does not support an explicit incorporation claim. It is more correct to state that the warrants reference the supporting affidavits.

7

(1:13cr239)

warrants invalid.  Indeed, in *Gahagan*, "[i]t was not disputed that the warrant itself did not specifically incorporate the affidavit.  However, the trial judge found that the warrant cross-referenced the affidavit." *Id*.  The Court, in *Gahagan,* also noted, with approval, that other courts had "taken into account facts known by the executing officer but not specifically stated in the affidavit or warrant to validate a search." *Id*.  In *United States v. Brown*, 49 F.3d 1162 (6th Cir. 1995), the Sixth Circuit ruled, "when one of the executing officers is the affiant who describes the property to the judge, and the judge finds probable cause to search the property as described by the affiant, and the search is confined to the areas which the affiant described, then the search, in this case, is in compliance with the fourth amendment." *Brown*, 49 F.3d at 1169 (quoting *Gahagan*, 865 F.2d at 1499.)  *See also*, *United States v. Pritchett*, 40 Fed.Appx. 901, 907, 2002 WL 1478584 (6th Cir. 2002).  In this case, each warrant referenced the supporting affidavit.  As importantly, Lt. Icenhour, the affiant, executed each of the three warrants.  Indeed, the very fact that Lt. Icenhour applied for the second warrant is proof that he limited the execution of the first warrant to the parameters of the affidavit.  Similarly, his application for the second warrant, again, encourages the belief that he limited the second search to the parameters spelled out in the second affidavit.  The same can be said about the application for the third search warrant.

Rarick also argues the warrants are invalid because they fail to describe the suspected criminal conduct to which the search is related.  ECF No. 19 at 12.  Rarick does not cite binding legal authority requiring a warrant to describe the criminal conduct suspected, and the Court has

8

(1:13cr239)

been unable to locate any.⁴ Notably, the affidavits filed with each warrant describe the criminal conduct being investigated. See ECF Nos. 23-1 at 1; 23-2 at 3; 23-3 at 1. As explained above, each of the warrants reference the affidavits; were signed by a judge whom reviewed both warrant and affidavit; and was executed by the affiant Lt. Icenhour whom had first-hand knowledge of the probable cause, including suspected crimes, supporting the warrant. Accordingly, the failure of the warrants themselves to describe the criminal conduct being investigated did not render the warrants invalid.

### B. Whether the First Warrant Was Overly Broad

Rarick's argument that the failure to limit the search resulting from the first warrant, to files created on February 14, 2013, the date of the encounter with Officer Mager, is unavailing.⁵ See ECF No. 19 at 6. Files stored on a "smart phone" such as the one at issue may be created and stored in a number of different formats and with or without dates. Additionally, files of interest could have been deleted or manipulated by Rarick either during his encounter with the officers, or, at his direction, after the police seized the phone. Thus, it cannot be said that the warrant is overly broad because it failed to restrict the search to files created on February 14, 2013. See Richards, 659 F.3d at 541 (finding the warrant was not too broad because, "[a]t the

---

⁴ Rarick, in his motion, erroneously relied on the dissent in United States v. Brown, 49 F.3d 1162 (6th Cir. 1995)) in support of his position. Although he claims in his reply brief that additional case law also supports his argument, the case law cited from the Sixth Circuit does not do so, and the Court declines to adopt other circuit court opinions on the issue.

⁵ Rarick submits that the execution of the first search warrant was overly broad, "as Lieutenant Icenhour clearly did not limit his search to data created or accessed on the date of Mr. Rarick's arrest." ECF No. 19 at 17. He also challenges the manner of the search and the chronology of Lt. Icenhour's report.

(1:13cr239)

time of the seizure, agents did not know how and where the [] related content would be stored on the server."). In fact, after considering Officer Mager's report that Rarick continued to manipulate his phone throughout his encounter with her and Defendant's expert testimony that a file could be e-mailed then deleted from the phone in a matter of seconds, it would have been careless to limit the search in the ways suggested by Rarick.  Additionally, when the police seized the cell phone it was in recording mode, and it continued to record until sometime later when the battery went dead.[6]  The phone had capabilities of being remotely accessed, permitting an individual to access the phone remotely and manipulate data.  The complexity of data manipulation, identification and retrieval was well known to Lt. Icenhour, as were the facts surrounding Rarick's use of and accessability to his phone.  Thus, it cannot be said that the warrant should have limited the search to files that were created or accessed on February 14, 2013.  See id. at 540 (noting that federal courts, "[a]pplying a reasonableness analysis on a case-by-case basis, . . . have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers," citing United States v. Stabile, 633 F.3d 219, 239 (3d Cir. 2011) (search reasonable because "criminals can easily alter file names . . . to conceal contraband" and the officer "took steps to ensure that his investigation complied with the state search warrant"); United States v. Summage, 481 F.3d 1075, 1079-80 (8th Cir. 2007) (broad warrant to search personal computer was sufficient because at the time the warrant was sought, "the officers knew only that a video and photographs of the alleged incident supposedly

---

[6] The police were unable to stop the recording or shut off the cell phone because it had been locked.

(1:13cr239)

existed, not the particular format in which these items were being kept.")).

Accordingly, the first warrant's failure to restrict the search to files created or accessed on February 14, 2013 does not render the warrant overly or unconstitutionally broad, *see Richards, 659 F.3d at 541*, and, as described in more detail below, Lt. Icenhour took steps to ensure that his investigation complied with the search warrant, *see Gahagan, 865 F.2d at 1497*. Rarick's similar arguments relating to the second and third warrants are equally unavailing for the same reasons described above.

**C. The Manner of the Search**

Rarick argues that Lt. Icenhour could have easily limited his search to files created on the afternoon of February 14, 2013 by using a search filter. ECF No. 19 at 17. Instead, Rarick asserts, Lt. Icenhour "searched the entire file section of Mr. Rarick's phone, discovering audio files and picture/video files created or accessed prior to the date of Mr. Rarick's arrest." ECF No. 26 at 9. Rarick offers computer information systems expert K. Gus Dimitrelos in support of his argument that Lt. Icenhour could have used search tools that would have enabled him to limit his search to files that were created on February 14, 2013. ECF No. 26 at 8-9.

Defense expert Dimitrelos testified that Susteen, the software used by Lt. Icenhour, permits a user to filter results so as to only include specific dates, and that such a filter could have been used by Lt. Icenhour to limit his search of the data. However, both Lt. Icenhour and Dimitrelos testified that conducting the search using a date filter causes a risk that files may be missed. For example, Dimitrelos testified that the filter does not include files that are not date stamped. He also testified that some files would be filtered out even though they may contain the

11

(1:13cr239)

correct date.[7] He stated that it is prudent to use more than one type of software when examining filtered data, because results may vary from program to program. He admitted that the most effective way to search for a particular file is to go through all the files, and that he would train officers to conduct a data search accordingly. Ultimately, the defense expert endorsed the search methodology employed by Lt. Icenhour.

At the Hearing, Lt. Icenhour testified that he was looking for an audio or video file, noting that he was not sure what type of recording Rarick had made, and that there may have been more than one recording. The record supports this statement and Rarick does not refute it. Lt. Icenhour testified that, after he imported data from the phone onto his computer using Susteen software, he scrolled down to the audio files and found that there were about 349 files. He continued scrolling down, past photo files, to the video files. He testified that the photo files were displayed as thumbnails, so that one could see the image, and that the video files were displayed as thumbnails that showed the first frame of the film. It was while scrolling down to

---

[7] Dimitrelos was asked,

    Q    . . . And if you rely exclusively on filtering programs, you run the risk of missing relevant data; is that correct?

    A.    If you filter data, there's a possibility that you could miss data, yes.

\* \* \*

    Q.    If you're looking for an audio recording that was recorded on February 14th and you just filter by February 14th and only look at files that say they were created on February 14th, you might miss that audio?

    A. Find or miss it, yeah, either way. Either answer would be correct, yeah.

(1:13cr239)

the video files that Lt. Icenhour saw the photo thumbnails containing images of child pornography.

Because the testimony of Lt. Icenhour and defense expert Dimitrelos agrees that searching data through a date filter risks excluding files, the Court finds that Lt. Icenhour's failure to search using a date filter was not impermissibly broad, and that his search was the most effective and reasonable way to search for relevant recordings on Rarick's phone. *See United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012) ("given the unique problems encountered in computer searches and the practical difficulties inherent in implementing universal search methodologies, the majority of federal courts . . . have employed the Fourth Amendment's bedrock principle of reasonableness. . . 'a computer search may be as extensive as reasonably required to locate the items,'" quoting *Richards*, 659 F.3d at 538)); *United States v. Triplett*, 684 F.3d 500, 506 (5th Cir. 2012) (forensic investigator searching contents of defendant's computer for evidence concerning a disappearance discovered suspected child pornography and stopped the search to obtain a second warrant; "[a]lthough officers should limit exposure to innocent files, for a computer search, 'in the end, there may be no practical substitute for actually looking in many (perhaps all) folders and sometimes the documents contained within those folders[,]'" quoting *Richards*, 659 F.3d at 539).

### D. The Chronology of the Search

Lt. Icenhour testified that he found the relevant February 14, 2013 file after the second search warrant had been secured. He stated that, as he scrolled past the photo images to the videos, "[t]here was one [video file] that showed like a picture of a beige wall, and I thought

13

(1:13cr239)

maybe that was the start of a video before coming out of the Cheap Tobacco store, clicked on it. Obviously, it wasn't. It was a case involving a minor, a video." At that point, Lt. Icenhour stopped the video and the search and reported his findings to the police chief. Thereafter, the second warrant was obtained, at 1:48 p.m. on February 21, 2013, to search the phone contents for material related to child pornography. Lt. Icenhour stated that he eventually located the February 14, 2013 recording during the search of the phone under the second warrant.

To the extent a reading of Lt. Icenhour's report may be interpreted as inconsistent with the aforesaid sequence of events, Lt. Icenhour explained during his testimony that he wrote his report not to reflect the true time sequence, but to reflect the way the search relates to the evidence found. He testified,

> This case was written in twofold. The first initial case was a traffic stop. If you notice, the report format is all italicized and indented. That was just related strictly to the obstruction of official business, which was going to be turned over in discovery to the municipal court. I didn't want to incorporate a child porn case in the municipal court that has no jurisdiction over that. Therefore, I wrote the traffic case, I copied it, indented it to show that this is how it kind of started, the traffic case. It wasn't specifically going to be chronological related to the child porn case, but I wanted it to be part of this case, because that's what precipitated finding the child porn.

The Court finds credible Lt. Icenhour's explanation regarding the report and finds it to be consistent with the appearance of the report and his remaining testimony. Additionally, having considered the evidence presented in the pre-Hearing briefs, at the Hearing, and that included in the unsolicited post-Hearing briefing, the Court concludes that even if the February 14, 2013 file had been discovered prior to the issuance or execution of the second search warrant, Lt. Icenhour held a reasonable belief that there was or could have been more than one file containing a

(1:13cr239)

recording of the 14th on the cell phone.[8] Based on this reasonable belief, it would have been reasonable, therefore, for Lt. Icenhour to continue to search the cell phone for additional recordings that were made during Rarick's police encounter. In sum, the Court finds that the execution of the first search warrant was not unconstitutionally broad.

### E. The Plain View Doctrine

Assuming, *arguendo*, that the search was executed in an overly broad manner, the plain view exception to the Fourth Amendment's warrant requirement applies. When an officer is lawfully in a place from which an object can be plainly seen and the object's incriminating character is immediately apparent, the officer may seize the object without a warrant. *See Horton v. California*, 496 U.S. 128, 136-37 (1990).

In the instant case, Lt. Icenhour was lawfully in the area in which the files could be

---

[8] In an unsolicited post-Hearing brief, Rarick disputes Lt. Icenhour's account and points to Lt. Icenhour's report indicating a screen shot that shows the properties of the February 14, 2013 file. ECF No. 36 at 2 (citing *Defense Ex. A at 2-3*). Rarick argues that, because the screen shot shows that the file was "created February 21, 2013 at 9:17.02 a.m.," it discredits Lt. Icenhour's testimony that he found the file after the second search warrant issued. *Id*. The Court notes, however, that Lt. Icenhour's report states, "[t]he created date and time reflects the date and time I copied it to my desktop on my computer[pursuant to the first warrant]." *Defense Ex. A* at 2. Thus, the "created" time does not reflect the time the file was found, but rather the time the phone data was copied onto Lt. Icenhours's computer. Lt. Icenhour's testimony, furthermore, is consistent with his report in which he states that he began the search, pursuant to the first search warrant, shortly after receiving the pass code, which he received February 21, 2013 at 8:49 a.m. *Id*.

After the government responded to Rarick's post-hearing brief pointing out the explanation noted above, Rarick filed a reply brief, to which he attaches a document produced by the government that was not referred to or submitted into evidence at the Hearing. ECF No. 38. The document is the Secure View 3 report for Lt. Icenhour's examination of Rarick's phone. ECF No. 38-1. It is Rarick's contention that the "start" and "end" time, 8:40:01 and 9:02:25, respectively, indicate that the 9:17:02 time appearing on the February 14, 2013 file in question is, thus, not the time the file was copied onto the computer. ECF No. 38 at 1-2.

(1:13cr239)

viewed— on his computer viewing the data copied from Rarick's cell phone pursuant to a valid search warrant. He was scrolling past the photograph files to the videos files based on his reasonable belief that the recording was taken and preserved as a video. While scrolling, Lt. Icenhour encountered thumbnail photographs of child pornography, and video thumbnail files displaying images of the first frame of the video. Lt. Icenhour did not have to open these files to see what they contained— the images were conveniently displayed in plain view as thumbnails.[9] *See* [United States v. Williams, 592 F.3d 511, 522 (4th Cir. 2010)](#) (police search of computer looking for evidence of a particular crime revealed a display of thumbnail photographs depicting child pornography found to be in plain view; "[o]nce it is accepted that a computer search must, by implication, authorize at least a cursory review of each file on the computer, then the criteria for applying the plain-view exception are readily satisfied.").

Moreover, the video depicting a rape of a minor discovered by Lt. Icenhour was also in plain view. Lt. Icenhour testified that, while still scrolling through the video files, which he was lawfully viewing, he came upon a video file with a thumbnail image of a beige wall that he reasonably believed may have been the wall of the Cheap Tobacco store. Because he was looking for audio and/or video files of the encounter on February 14, 2013 that could have began while Rarick was exiting the Cheap Tobacco store, it was reasonable to click on the video to view it. When Lt. Icenhour realized the beige wall was a motel room and the video was of an unclothed minor, he stopped the video and reported his findings to the police chief. He then

---

[9] Because Rarick may also have taken photographs of the police encounter, and it would have been permissible for Lt. Icenhour to open the photograph files.

16

(1:13cr239)

obtained the second warrant to expand the scope of his search.

The Court finds that the photographs and video were discovered by Lt. Icenhour in plain view, and that he did not exceed the scope of the warrant in discovering them.

### F. The "Good Faith" Exception

Assuming, *arguendo*, that the search warrant lacked particularity, the validity of the search is upheld because of the application of the *Leon* "good faith" exception. The Supreme Court, in *United States v. Leon*, 468 U.S. 897 (1984), adopted the good faith exception to the exclusionary rule in recognition of the fact that the exclusionary rule is a punitive rule designed to deter police misconduct. In cases in which police conduct a search in objectively reasonable reliance on a warrant later held invalid, excluding relevant evidence would not serve the purpose of the exclusionary rule. *Id*. at 922. Only "police conduct that evidences a 'deliberate, reckless, or grossly negligent' disregard for Fourth Amendment rights" may justify the use of the exclusionary rule. *United States v. Kinison*, 710 F.3d 678, 685 (6th Cir. 2013), citing *United States v. Davis*, 131 S. Ct.2419, 2427 (2011).

Rarick argues that the good faith exception does not apply to Lt. Icenhour because Lt. Icenhour "intended to search Mr. Rarick's cell phone expansively and beyond the recording from the date of his arrest." ECF No. 26 at 10. In support of his argument, Rarick submits CD recordings of a conversation Rarick and his father, Michael Rarick, had with Lt. Icenhour, which was recording by Rarick.[10]

---

[10] One CD recording was of a conversation Michael Rarick had with police officers at the station, recorded by Michael Rarick. That conversation primarily revealed that the police, when questioned, explained to Defendant's father Michael Rarick that they had lawfully seized his

17

(1:13cr239)

The recordings reflect that Lt Icenhour explained to Rarick and his father that he was going to retrieve recordings Rarick made during his encounter with police from Rarick's cell phone. Lt. Icenhour explained that, to effectuate this retrieval, he was going to copy all the data from Rarick's cell phone onto his computer. Rarick objected to Lt. Icenhour copying all the files onto the police computer. He offered to identify the relevant files for Lt. Icenhour so as to obviate the need to copy all Rarick's phone files. Lt. Icenhour explained to Rarick that this was not the procedure used by police to search a phone for evidence. He once again explained that he would copy the data from Rarick's cell phone onto his computer, noting, "that's how forensic software works."

Lt. Icenhour's statement above is consistent with his testimony at the Hearing and also the testimony of Rarick's own cellular forensic software expert Dimitrelos, both of whom testified that, in order to search the cell phone, the entire contents of the cell phone had to be extracted and copied from the cell phone onto a computer. Dimitrelos confirmed that what Lt. Icenhour told Rarick was an accurate statement of what is required to analyze the phone's data.[11] Accordingly, the Court finds that the audio CD submitted by Rarick does not support a theory that Lt. Icenhour "verbalized his intention to conduct a general search of Mr. Rarick's cell phone

---

son's cell phone as evidence, and would request either consent or a warrant to retrieve the recording stored on the phone. The other recording, more relevant to the instant analysis, was of a conversation Lt. Icenhour had with Rarick himself wherein Rarick was given the opportunity to consent to a search of his phone.

[11] At the Hearing, Lt. Icenhour stated that, "[Rarick] in so many words, said he wanted to come back with me to help analyze the phone. I explained to him . . . that's not procedure how we analyze evidence, we don't have the suspect stand there with us while we do it."

(1:13cr239)

before even applying for a search warrant." ECF No. 26 at 8. Instead, Lt. Icenhour repeatedly explained how the software worked and how the search would be conducted, which is consistent with Hearing testimony regarding effective data searches. Rather than eviscerate Lt. Icenhour's good faith, the recordings, if anything, serve to strengthen it. Moreover, Lt. Icenhour, in the course of four days, applied for and received three separate search warrants, including two for the same cell phone. The record before the Court clearly reflects the actions of a law enforcement officer whom was not acting in disregard of Rarick's Fourth Amendment rights. Rather, Lt. Icenhour took great care to preserve and respect Rarick's rights, as evidenced by Lt. Icenhour's repeatedly application for authorization to conduct the necessary searches.

### III. Conclusion

For the reasons explained above, Rarick's Motion to Suppress is denied. ECF No. 19.

IT IS SO ORDERED.

 January 6, 2014　　　　　　　　　　　　　 /s/ Benita Y. Pearson　　　　　　
 Date　　　　　　　　　　　　　　　　　　　Benita Y. Pearson
　　　　　　　　　　　　　　　　　　　　　 United States District Judge